UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* CHERYL NOLTE BARNES<br><br>Plaintiff(s),<br><br>v.<br><br>CLARK COUNTY, et al.,<br><br>Defendant(s). | Case No. 2:15-CV-1621 JCM (VCF)<br><br>ORDER |

Presently before the court is defendants Clark County, Clark County Department of Aviation ("DOA"), and McCarran International Airport's motion to dismiss. (ECF No. 21). Plaintiff Cheryl Nolte Barnes filed a response (ECF No. 27), to which defendants replied (ECF No. 31).

**I.    Facts**

Plaintiff's complaint alleges *qui tam* False Claims Act claims against defendants for allegedly false representations made by defendants in funding applications to the Federal Aviation Administration ("FAA"). (ECF No. 13).

*a.   Federal funding*

In 1990, the FAA created the Passenger Facility Charge Program ("PFC program"). The program authorizes "eligible agenc[ies] to impose a passenger facility charge . . . on each paying passenger of an air carrier or foreign air carrier boarding an aircraft at an airport the agency controls to finance an eligible airport-related project." 49 U.S.C. § 40117(b). To get funding, agencies must submit satisfactory applications to the FAA.

**James C. Mahan**
**U.S. District Judge**

In 1992, the DOA applied for funding under the PFC program and received $3 per passenger to fund several programs. (ECF Nos. 13, 21). On June 7, 1993, the DOA was again approved to receive funds through the PFC program. (ECF Nos. 13, 21).

Defendants also applied for and received numerous federal grants through the FAA for airport improvement projects.[1] (ECF Nos. 13, 21). In order to apply for federal grants through the FAA, defendants had to agree to certain "Sponsor Certification[s]":

> The sponsor hereby assures and certifies, with respect to this grant that . . . it will comply with all applicable Federal laws, regulations, executive orders, policies, guidelines, and requirements as they relate to the application, acceptance and use of Federal funds for this project including but not limited to . . . e. Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 Title 42 U.S.C. 4601, et seq.
> \*\*\*
> [The sponsor] will carry out the project in accordance with policies, standards, and specifications approved by the Secretary including but not limited to the advisory circulars listed in the Current FAA Advisory Circulars for AIP projects, dated --- (the latest approved version as of this grant offer) and included in this grant, and in accordance with applicable state policies, standards, and specifications approved by the Secretary.

(ECF No. 21-9).

    *b.   The Vacation Village litigation*

On December 17, 1993, plaintiff, along with her siblings, CEH Properties, Ltd. ("CEH"), and Vacation Village, Inc., filed an inverse condemnation claim against Clark County in state court. *See Vacation Village, Inc. v. Clark Cty., Nev.*, 497 F.3d 902, 909 (9th Cir. 2007). In that case, the plaintiffs alleged claims arising out of alleged takings under Ordinances 1221 and 1198. *Id.*

While the action was pending, CEH filed a voluntary bankruptcy petition under Chapter 11 of the Bankruptcy Code, listing in its schedules the inverse condemnation claims against Clark County as contingent and unliquidated. *Id.* After a bench trial in bankruptcy court in which the bankruptcy judge ruled in favor of plaintiffs on their taking claim as related to Ordinance 1221,

---

[1] For a detailed list of the grants, see defendants' motion to dismiss (ECF No. 21) and Appendix B to defendants' motion (ECF No. 21-3).

**James C. Mahan**
**U.S. District Judge**

- 2 -

and a subsequent entry of final judgment in federal district court awarding the plaintiffs $10,121,686.63, defendant appealed the judgment to the Ninth Circuit.[2]  *Id.*

As is relevant to this action, in its briefing with the Ninth Circuit, plaintiff Vacation Village (along with Cheryl Nolte, among others) noted that Clark County receives "[f]ederally approved funding through passenger facility charges and grants from the FAA," "[a] condition of Clark County's receipt of such funding was the obtaining of the right to clear the airspace needed for landings and takeoffs," and the county must "comply with the requirements of the URA."  (ECF No. 21-11).  This brief was signed on January 25, 2006.  *Id.*

In *Vacation Village*, the Ninth Circuit held that under the Nevada Supreme Court's decision in *McCarran Int'l Airport v. Sisolak*, 137 P.3d 1110 (Nev. 2007), which was decided after the parties had completed their briefing on appeal, Clark County's conduct amounted to a regulatory *per se* taking.  *Id.* at 916-19.  The Ninth Circuit remanded the case to the district court for reconsideration of its award of just compensation in light of *Sisolak*.  *Id.* at 919.

After litigation on remand and a subsequent appeal of the judgment as to just compensation, the parties settled the action, with Clark County agreeing to pay $7,923,625.48.  *In re: CEH Properties, Ltd.: Vacation Village, Inc., et al. v. Clark Cty., Nev., et al.*, case no. 2:05-cv-00010-RCJ-RJJ (ECF Nos. 190, 197, 234).  Clark County satisfied this judgment in full.  *Id.* at (ECF No. 238).

## II. Legal Standard

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

"Factual allegations must be enough to rise above the speculative level."  *Twombly*, 550 U.S. at 555.  Thus, to survive a motion to dismiss, a complaint must contain sufficient factual

---

[2] For a more thorough review of the litigation, see *Vacation Village*, 497 F.3d at 907-10.

matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss.  First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678–79.  Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice.  *Id.* at 678.

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief.  *Id.* at 679.  A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.  *Id.* at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted).  When allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed.  *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  The *Starr* court stated, in relevant part:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.  Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

Although courts "normally treat all of a plaintiff's factual allegations in a complaint as true," they "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001); *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014) (citing *Slater v. A.G. Edwards & Sons, Inc.,* 719 F.3d 1190, 1196 (10th Cir. 2013) ("And if those documents [referenced in the complaint] conflict with allegations in the complaint, we need not

**James C. Mahan**
**U.S. District Judge**

- 4 -

accept those allegations as true.")).  Courts are also "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."  *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1295-96 (9th Cir. 1998).

### III. Discussion

Plaintiff alleges that defendants made fraudulent misrepresentations in their grant applications regarding defendants' compliance with relevant Advisory Circulars.  (ECF No. 13).  Plaintiff cites AC 150/5300-13 and 150/5190-4 as two relevant circulars that it alleges defendants failed to comply with and fraudulently reported compliance on their grant applications.  *Id.*  Plaintiff also cites the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 ("URA") as a statute defendants allegedly violated and falsely reported compliance on grant applications.  *Id.*

Plaintiff's complaint relies on certain zoning ordinances passed by Clark County as violative of the above Advisory Circulars and URA.  *Id.*  Plaintiff in particular points to Clark County Ordinance 1599, which became effective on July 6, 1994.[3]  *Id.*

Both parties reference the Nevada Supreme Court's decision in *McCarran Int'l Airport v. Sisolak*, 137 P.3d 1110, 1116 (Nev. 2006).  In *Sisolak*, the court held "the adoption of ordinances that established a permanent physical invasion of the airspace above Sisolak's property, thereby appropriating the airspace for the County's use, effectuated a *per se* taking of his property under the Nevada Constitution."  *Id.* at 1127.  The court held that when considering a *Sisolak*-type takings claim, lower courts must determine (1) whether a landowner had a "valid property interest in the airspace over his [or her] property"; (2) "whether the height restrictions constituted a regulatory *per se* taking"; and (3) in the event of a valid takings claim, the amount of "just compensation."  *Id.* at 1119.

As a result of the Nevada Supreme Court's decision in *Sisolak*, Clark County was the subject of numerous lawsuits alleging a takings clause violation and demanding compensation.  Clark County defended these suits by arguing the extent that an airspace taking had occurred on

---

[3] Another relevant ordinance is Ordinance 1221, which became effective on August 1, 1990.

**James C. Mahan**
**U.S. District Judge**

- 5 -

1  the property that was the subject of the lawsuit and arguing the amount of just compensation
2  required under the law.

   *a. The statute of limitations*

4  Defendants argue that dismissal is appropriate for all claims arising prior to August 24,
5  2009, pursuant to the statute of limitations in 31 U.S.C. § 3731(b).

6  31 U.S.C. § 3731(b) governs the applicable limitations period for FCA claims. In *U.S. ex*
7  *rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211 (9th Cir. 1996), the court held that a civil action brought
8  by a *qui tam* plaintiff under the FCA must be commenced within,

> (1) six years after the date on which the violation is committed; or (2) three years after the date when facts material to the right of action are known or reasonably should have been known by the *qui tam* plaintiff, whichever occurs last. A suit under the Act must, in any event, be brought no more than ten years after the date on which the violation occurred.

*Id.* at 1218.

Here, neither party disputes that many of the alleged violations occurred prior to August 24, 2009. Therefore, in order for plaintiff to demonstrate that her claims are not barred by the statute of limitations, plaintiff must show that she filed suit within three years after the date on which facts material to her causes of action were known or reasonably should have been known by her.

Plaintiff's suit was not filed within three years after the date she reasonably should have known of the facts material to her causes of action. Plaintiff presumably had knowledge of the facts giving rise to her claims as early as 1993, when she filed her original inverse condemnation action. Further, in 2006, when plaintiff, among others, filed a brief with the Ninth Circuit noting that Clark County received federal funding from PFC charges and grants from the FAA and a condition of that funding was the right to clear the airspace, she demonstrated an awareness of the facts giving rise to the current cause of action. Thus, plaintiff reasonably should have known the facts material to her current FCA claims as of 2006. Plaintiff's failure to file a FOIA request until 2014 does not alter the analysis.

The statute of limitations bars all actions taken by the county prior to August 24, 2009. *See Hyatt*, 91 F.3d at 1218. Therefore, plaintiff cannot maintain causes of action based on grant

**James C. Mahan**
**U.S. District Judge**

- 6 -

1 applications submitted between 2005 and 2008 or claims related to PFC program approvals
2 occurring in 1992 and 1993.

   b.  *Claims not barred by the statute of limitations*

Defendants argue that plaintiff's FCA claims which are not barred by the statute of limitations are deficient in multiple respects. (ECF No. 21). First, defendants allege that plaintiff's allegations do not satisfy the FCA's scienter requirement that a person submit a false claim with knowledge of the claim's falsity. *Id.* Second, defendants argue that plaintiff does not address the element of causation in her complaint or briefing. *Id.* Third, defendants argue that any alleged falsities in defendants' applications for grants and PFC program approvals were not material to the government's decision to provide funding to defendants. *Id.* Fourth, defendants argue that plaintiff has not properly pled that defendants ever made a false claim. *Id.* The court need only address defendants' first argument.

The FCA defines "knowing" and "knowingly" to mean "actual knowledge of the information," "acts in deliberate ignorance of the truth or falsity of the information," or "acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A); *see Universal Health Servs., Inc. v. U.S. el rel. Escobar*, 136 S.Ct. 1989, 1996 (2016). "Innocent mistakes, mere negligent representations, and differences in interpretations are not sufficient for False Claims Act liability to attach." *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (citing *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1267 (9th Cir. 1996)); *see U.S. ex rel. Hagood v. Sonoma Cty. Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991) ("To take advantage of a disputed legal question . . . is to be neither deliberately ignorant nor recklessly disregardful.").

Here, plaintiff has not plausibly alleged that defendants knowingly made false statements. For the last decade defendants have engaged in inverse condemnation litigation related to *Sisolak*-type takings claims. During the course of the litigation defendants have asserted a legal right to disputed airspace and argued the extent of their legal liability in the event of an adverse finding. Plaintiff's assertion that defendants knowingly misrepresented their positions regarding whether defendants took airspace without just compensation does not comport with this litigation history. Her arguments boil down to a disagreement over the proper interpretation of *Sisolak* and of

**James C. Mahan**
**U.S. District Judge**

- 7 -

defendants' duties under the law post-*Sisolak*. Even if defendants' interpretation of *Sisolak* is not correct, this is not enough for FCA liability to attach to resulting assertions made in grant applications. *See Hendow*, 461 F.3d at 1174.

Aside from defendants "concealment" of their alleged violations of the URA, AC 150/5300-13 and AC 150/5190-4A, plaintiff does not otherwise allege that defendants knowingly made false statements within the six years leading up to the filing of plaintiff's complaint. Therefore, as plaintiff's complaint does not plausibly allege that defendants knew they were making false statements on grant applications, plaintiff's complaint fails to properly plead the scienter requirement of an alleged FCA violation. *See Hendow*, 461 F.3d at 1174.

As plaintiff fails to properly plead that defendants knowingly submitted a false claim to the United States government in the six years prior to the filing of her complaint, the court will not address defendants' alternative arguments for dismissal.

   c. *Defendants' request for attorney's fees*

In defendants' motion to dismiss, defendants request an award of reasonable attorney's fees. Although defendants correctly articulate the standard under 31 U.S.C. § 3730(4) for an award of attorney's fees in a False Claims Act action, the request for attorney's fees included within a motion to dismiss violates LR IC 2-2 ("For each type of relief requested or purpose of the document, a separate document must be filed and a separate event must be selected for that document. Examples: . . . (ii) separate documents must be filed for a motion to dismiss and a motion to sever, rather than filing a motion to dismiss and to sever in one document."). Therefore, the court will not consider defendants' request, as it is not properly before the court.

**IV.  Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion to dismiss (ECF No. 21) be, and the same hereby is, GRANTED.

DATED January 8, 2018.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 8 -