UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

UNITED STATES OF AMERICA, *ex rel.* CHERYL NOLTE BARNES

Plaintiff(s),

v.

CLARK COUNTY, et al.,

Defendant(s).

Case No. 2:15-CV-1621 JCM (VCF)

ORDER

Presently before the court is defendants Clark County, Clark County Department of Aviation ("DOA"), and McCarran International Airport's (collectively, "defendants") motion for attorney's fees. (ECF No. 52). Plaintiff Cheryl Nolte filed a response (ECF No. 56), to which defendants replied (ECF No. 65).

Also before the court is plaintiff's motion to exclude prohibited character attacks. (ECF No. 55). Defendants filed a response (ECF No. 67), to which plaintiff replied (ECF No. 69).

**I.    Facts**

Plaintiff's amended complaint alleged *qui tam* False Claims Act claims against defendants for allegedly false representations made by defendants in funding applications to the Federal Aviation Administration ("FAA"). (ECF No. 13).

*a. Federal funding*

In 1990, the FAA created the Passenger Facility Charge Program ("PFC program"). The program authorizes "eligible agenc[ies] to impose a passenger facility charge . . . on each paying passenger of an air carrier or foreign air carrier boarding an aircraft at an airport the agency controls

to finance an eligible airport-related project." 49 U.S.C. § 40117(b). To obtain funding, agencies must submit satisfactory applications to the FAA.

In 1992, the DOA applied for funding under the PFC program and received $3 per passenger to fund several programs. (ECF Nos. 13, 21). On June 7, 1993, the DOA was again approved to receive funds through the PFC program. (ECF Nos. 13, 21).

Defendants also applied for and received numerous federal grants through the FAA for airport improvement projects.[1] (ECF Nos. 13, 21). In order to apply for federal grants through the FAA, defendants had to agree to certain "Sponsor Certification[s]":

> The sponsor hereby assures and certifies, with respect to this grant that . . . it will comply with all applicable Federal laws, regulations, executive orders, policies, guidelines, and requirements as they relate to the application, acceptance and use of Federal funds for this project including but not limited to . . . e. Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 Title 42 U.S.C. 4601, et seq.
> ***
> [The sponsor] will carry out the project in accordance with policies, standards, and specifications approved by the Secretary including but not limited to the advisory circulars listed in the Current FAA Advisory Circulars for AIP projects, dated --- (the latest approved version as of this grant offer) and included in this grant, and in accordance with applicable state policies, standards, and specifications approved by the Secretary.

(ECF No. 21-9).

   *b. The Vacation Village litigation*

On December 17, 1993, plaintiff, along with her siblings, CEH Properties, Ltd. ("CEH"), and Vacation Village, Inc., filed an inverse condemnation claim against Clark County in state court. *See Vacation Village, Inc. v. Clark Cty., Nev.*, 497 F.3d 902, 909 (9th Cir. 2007). In that case, the plaintiffs alleged claims arising out of alleged takings under Ordinances 1221 and 1198. *Id.*

While the action was pending, CEH filed a voluntary bankruptcy petition under Chapter 11 of the Bankruptcy Code, listing in its schedules the inverse condemnation claims against Clark County as contingent and unliquidated. *Id.* After a bench trial in bankruptcy court in which the bankruptcy judge ruled in favor of plaintiffs on their taking claim as related to Ordinance 1221,

---

[1] For a detailed list of the grants, see defendants' motion to dismiss (ECF No. 21) and Appendix B to defendants' motion (ECF No. 21-3).

and a subsequent entry of final judgment in federal district court awarding the plaintiffs $10,121,686.63. *Id.* Defendant appealed the judgment to the Ninth Circuit.[2] *Id.*

In its briefing with the Ninth Circuit, plaintiff Vacation Village (along with Cheryl Nolte, among others) noted that Clark County receives "[f]ederally approved funding through passenger facility charges and grants from the FAA," "[a] condition of Clark County's receipt of such funding was the obtaining of the right to clear the airspace needed for landings and takeoffs," and the county must "comply with the requirements of the URA." (ECF No. 21-11). This brief was signed on January 25, 2006. *Id.*

In *Vacation Village*, the Ninth Circuit held that under the Nevada Supreme Court's decision in *McCarran Int'l Airport v. Sisolak*, 137 P.3d 1110 (Nev. 2007), which was decided after the parties had completed their briefing on appeal, Clark County's conduct amounted to a regulatory *per se* taking. *Id.* at 916–19. The Ninth Circuit remanded the case to the district court for reconsideration of its award of just compensation in light of *Sisolak*. *Id.* at 919.

After litigation on remand and a subsequent appeal of the judgment as to just compensation, the parties settled the action, with Clark County agreeing to pay $7,923,625.48. *In re: CEH Properties, Ltd.: Vacation Village, Inc., et al. v. Clark Cty., Nev., et al.*, case no. 2:05-cv-00010-RCJ-RJJ (ECF Nos. 190, 197, 234). Clark County satisfied this judgment in full. *Id.* at (ECF No. 238).

*a. The present litigation*

On March 6, 2017, plaintiff served her amended complaint on defendant. (ECF Nos. 13–20). In the amended complaint, plaintiff alleged that defendants made fraudulent misrepresentations in their grant applications regarding defendants' compliance with relevant advisory circulars. (ECF No. 13). Plaintiff's amended complaint relied on certain zoning ordinances passed by Clark County as violative of the above advisory circulars and URA. *Id.*

On March 28, 2017, defendant filed a motion to dismiss plaintiff's amended complaint and request for attorney's fees. (ECF No. 21). Both parties referenced the Nevada Supreme Court's decision in *McCarran Int'l Airport v. Sisolak*, 137 P.3d 1110, 1116 (Nev. 2006). In *Sisolak*, the court held "the adoption of ordinances that established a permanent physical invasion of the

---

[2] For a more thorough review of the litigation, see *Vacation Village*, 497 F.3d at 907–10.

airspace above Sisolak's property, thereby appropriating the airspace for the County's use, effectuated a *per se* taking of his property under the Nevada Constitution." *Id.* at 1127. The court further held that when considering a *Sisolak*-type takings claim, lower courts must determine (1) whether a landowner had a "valid property interest in the airspace over his [or her] property"; (2) "whether the height restrictions constituted a regulatory *per se* taking"; and (3) in the event of a valid takings claim, the amount of "just compensation." *Id.* at 1119.

On January 8, 2018, this court granted defendant's motion to dismiss in its entirety. (ECF No. 49). In granting defendants' motion, the court dismissed all of plaintiff's claims arising prior to August 24, 2009, pursuant to the statute of limitations set forth in 31 U.S.C. § 3731(b). (ECF No. 49 at 6). As it pertains to these claims, the court noted that plaintiff presumably had knowledge of the facts giving rise to her claims as early as 1993, when she filed her original inverse condemnation action. *Id.* Further, in 2006, when plaintiff, among others, filed a brief with the Ninth Circuit noting that Clark County received federal funding from PFC charges and grants from the FAA and a condition of that funding was the right to clear the airspace, she demonstrated an awareness of the facts giving rise to the current cause of action. *Id.* Thus, the court noted, plaintiff reasonably should have known the facts material to her current FCA claims as of 2006. *Id.*

As to the claims not time-barred by the statute of limitations, the court found plaintiff had not plausibly alleged that defendants knowingly made false statements, as required by the FCA. 31 U.S.C. § 3729(b)(1)(A); *see Universal Health Servs., Inc. v. U.S. el rel. Escobar*, 136 S.Ct. 1989, 1996 (2016). Specifically, the court noted:

> During the course of the litigation defendants have asserted a legal right to disputed airspace and argued the extent of their legal liability in the event of an adverse finding. Plaintiff's assertion that defendants knowingly misrepresented their positions regarding whether defendants took airspace without just compensation does not comport with this litigation history. Her arguments boil down to a disagreement over the proper interpretation of *Sisolak* and of defendants' duties under the law post-*Sisolak*. Even if defendants' interpretation of *Sisolak* is not correct, this is not enough for FCA liability to attach to resulting assertions made in grant applications. *See Hendow*, 461 F.3d at 1174.

(ECF No. 49 at 7–8). Accordingly, the court granted defendants' motion to dismiss in its entirety. (ECF No. 49).

However, pursuant to LR IC 2-2, the court declined to consider defendants' request for attorney's fees, as defendants improperly submitted the request in conjunction with their motion to dismiss. *Id.* Here, defendants bring their separate motion for attorney's fees. (ECF No. 52).

**II.  Legal Standard**

Federal Rule of Civil Procedure 54(d)(2) allows a party to file a motion for attorney's fees if it: (1) is filed within 14 days after judgment is entered; (2) identifies the legal basis for the award; and (3) indicates the amount requested or an estimate thereof.

Title 42 U.S.C. § 1988(b) authorizes a court to exercise its discretion whether to allow a prevailing party in a 42 U.S.C. § 1983 case "a reasonable attorney's fee as part of the costs." Additionally, a district court may use its discretion to include expert fees as part of the attorney's fee award. 42 U.S.C. § 1988(c).

Reasonable attorney's fees are based on the "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The court must first determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Id.* "The district court . . . should exclude from this initial fee calculation hours that were 'not reasonably expended.'" *Id.* at 433–34. Thus, the "court has discretion to 'trim fat' from, or otherwise reduce, the number of hours claimed to have been spent on the case." *Edwards v. Nat'l Bus. Factors, Inc.*, 897 F. Supp. 458, 460–61 (D. Nev. 1995).

After calculating the lodestar amount, the court can further adjust the lodestar calculation by considering the following factors:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992); *see also Stetson v. Grissom*, 821 F.3d 1157, 1166–67 (9th Cir. 2016). A court's explanation of an attorney's fees award "need not be elaborate, but it must be comprehensible." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). "As *Hensley* described it, the explanation must be concise but *clear*." *Id.* (quotation marks omitted).

### III. Discussion

As a preliminary matter, the court has jurisdiction to hear defendants' motion for attorney's fees despite plaintiff's having appealed this case to the 9th Circuit. Although an appeal from the merits of a final judgment does not foreclose a district court from awarding attorney's fees, the district court may, in its discretion, "rule on the claim for fees, [ ] defer its ruling on the motion, or [ ] deny the motion without prejudice, directing under subdivision (d)(2)(B) a new period for filing after the appeal has been resolved." Fed. R. Civ. P. 54(d) advisory committee's note to 1993 amendment; *see also Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 956 (9th Cir. 1983) (citing *White v. New Hampshire Dep't of Emp't Sec.*, 455 U.S. 445 (1982) (holding that district court retains jurisdiction to rule on attorney's fees motions)).

Pursuant to 31 U.S.C. § 3730(d)(4), "[i]f the Government does not proceed with the action . . . the court may award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous. . ." 31 U.S.C. § 3730(d)(4). "An action is 'clearly frivolous' when 'the result is obvious or the appellant's arguments of error are wholly without merit.'" *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1006 (9th Cir. 2002) (quoting *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1402 (9th Cir. 1994)).

*a. The propriety of the request for attorney's fees*

Defendants' motion for attorney's fees is timely, pursuant to Federal Rule of Civil Procedure 54(d)(2). Under Rule 54, a claim for attorney's fees must be filed with 14 days of the entry of judgment. *See* Fed. R. Civ. P. 54(d)(2). The court entered judgment in favor of defendants

against plaintiff on January 9, 2018. (ECF No. 50). Defendants filed their motion for attorney's fees on January 23, 2018, within the 14-day period. (ECF No. 52).

Furthermore, defendants assert, and plaintiff does not dispute, that defendants are the prevailing party in this case, pursuant to the court's order granting defendants' motion to dismiss in its entirety and subsequent entry of judgment against plaintiff in favor of defendants. (ECF No. 52 at 13). *See also* (ECF No. 56). Therefore, the only remaining issue is whether defendants are entitled to attorney's fees pursuant to 31 U.S.C. § 3730(d)(4), which requires that, where the government does not proceed with the action, the claims of the person bringing the action were "clearly frivolous, clearly vexatious, or brought primarily for the purposes of harassment."

### *i. Defendants' alleged prohibited character attacks*

In defendants' motion for attorney's fees, defendants argue that plaintiff's claims were clearly frivolous and brought for the purpose of harassment. (ECF No. 52 at 13–14). Specifically, defendants argue that plaintiff proceeded with her claims in an effort to "smear the [defendants'] name[s]" with allegations of fraud and "to obtain a different result than her family was able to garner through the NAP litigation." *Id.* Defendants argue that plaintiff was motivated "by a desire to harass the County and a hope to get another bite at the apple." *Id.* Defendants further argue that plaintiff's claims were frivolous, pursuant to the rule in *Pfingston*, on the grounds that the positions plaintiff took in her amended complaint "are in direct contravention with the facts she was well aware of." (ECF No. 52 at 14).

In response to defendants' arguments, plaintiff filed a motion to exclude prohibited character attacks, including a request for oral argument, arguing that defendants impermissibly attacked plaintiff's "character to try to prove her action in filing this case to be in conformity with the action of a company in which she owns twenty percent (20%) in a different case." (ECF No. 55 at 3). Defendants filed a response to plaintiff's motion (ECF No. 67), explaining why reference to past litigation is necessary to show that plaintiff's claims were brought for the purpose of harassment, to which plaintiff replied (ECF No. 69).

However, as the court has not considered the allegations made by defendants that plaintiff now moves to exclude in ruling on defendants' motion for attorney's fees, the court need not hold

James C. Mahan
U.S. District Judge

- 7 -

a hearing regarding their propriety. Furthermore, as the court has reached its decision on defendants' motion for attorney's fees without consideration of the facts that plaintiff moves to exclude in her motion to exclude prohibited character attacks, the court will deny plaintiff's motion (ECF No. 55) as moot.

Indeed, the court need only consider defendants' argument that plaintiff's claims were frivolous, pursuant to 31 U.S.C. § 3730(d)(4), in order to rule on defendants' motion for attorney's fees.

### ii. *Plaintiff's claims are frivolous*

In defendants' motion for attorney's fees, defendants argue that plaintiff's claims were clearly frivolous, implausible, and brought with clear grounds for dismissal. (ECF No. 52 at 13–14). *See Pfingston*, 284 F.3d at 1006. In plaintiff's response to defendants' motion (ECF No. 56), plaintiff argues that her claims were not frivolous, citing the length of the litigation history for the proposition that her arguments maintained a "possibility of reasonableness." *Id.* at 4. Accordingly, plaintiff asserts that her claims were made "in good faith." *Id.*

However, as the *Pfingston* court held, an action is "clearly frivolous" when 'the result is obvious or the appellant's arguments of error are wholly without merit.'" *Pfingston*, 284 F.3d at 1006. As the court's order granting defendants' motion to dismiss notes, plaintiff's claims arising prior to August 24, 2009, were dismissed as being time-barred by the statute of limitations. In so ruling, the court noted that plaintiff "presumably had knowledge of the facts giving rise to her claims as early as 1993, when she filed her original inverse condemnation action." (ECF No. 49 at 6). Furthermore, plaintiff reasonably should have known the facts giving rise to her claims as of 2006, when she "filed a brief with the Ninth Circuit noting that Clark County received federal funding from PFC charges and grants from the FAA and a condition of that funding was the right to clear airspace." *Id.* Accordingly, these claims were frivolous, as the fact of their being time-barred by the statute of limitations should have been obvious to plaintiff.

As to plaintiff's claims that were not time-barred by the statute of limitations, the court found in its order granting defendants' motion to dismiss that plaintiff's claims failed to satisfy the

James C. Mahan
U.S. District Judge

- 8 -

FCA's scienter requirement. (ECF No. 49 at 7). The court noted that plaintiff's "assertion that defendants knowingly misrepresented their positions regarding whether defendants took airspace without just compensation does not comport with this litigation history." *Id.*

The court further noted that plaintiff's arguments boil down to a disagreement over the proper interpretation of *Sisolak* and of defendants' duties under the law post-*Sisolak*. Even if defendants' legal arguments made throughout the course of their FCA litigation history were deemed to be in error in light of the intervening *Sisolak* decision, which was decided after the parties had completed their briefing on appeal, this is not enough for FCA liability to attach to assertions made in grant applications. *Id.* Indeed, defendants could not have "knowingly misrepresented" their positions regarding whether they took airspace without just compensation, because the case establishing that they did in fact do so, *Sisolak*, was decided after the representations were made. Accordingly, plaintiff failed to allege an essential element of her FCA claims, scienter, and therefore these claims were wholly without merit and were properly dismissed by the court.

In light of the foregoing, the court finds that plaintiff's claims were frivolous, as the outcome of each was obvious, and each was brought with clear grounds for dismissal. Accordingly, the court will now consider the reasonableness of the fees requested under the lodestar calculation method.

### b. *The reasonability of the request pursuant to the lodestar calculation*

Defendants' motion seeks $133,896.22 in attorney's fees. (ECF No. 52 at 15). Reasonable attorney's fees are based on the "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The court must first determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Id.* In their motion requesting attorney's fees, defendants argue that counsel expended "approximately 700.20 hours in this action between March 2017, and January 2018 (with an additional 25.30 hours no-charged)." (ECF No. 52 at 15).

Defendants argue that the amount of hours expended was necessary in light of the approximately $3 million that the United States could have recovered and over $829 million that

plaintiff could have recovered had her claims been successful. *Id.* Additionally, defendants argue that this action presented complex legal issues and required extensive discovery in light of plaintiff's two-hundred and six (206) requests for admissions, justifying the amount of hours counsel expended on this case. *Id.* at 15–16.

As to the "reasonable hourly rate," defendants assert that defendants' counsel, of the law firm of Brownstein Hyatt Farber Schreck, LLP, ("Brownstein") charged between $165-$275 per hour to perform the work associated with this action. (ECF No. 52 at 16). Defendants assert that these rates were discounted, "and Brownstein provided an additional 15% discount to all invoices." *Id.* Defendants argue that the court should find these amounts reasonable in the community. *Id.* (citing *Alutiiq Int'l Sols., LLC,* No. 2:10-cv-1189-JAD-VCF, 2015 U.S. Dist. LEXIS 174831, at *27-28 (finding attorney's hourly rates of $335 to be reasonable in Las Vegas)).

Plaintiff's only argument against defendants' calculation of attorney's fees under the lodestar method is that defendants' incurrence of "$133,000 in attorney's fees seems exorbitant on its face." (ECF No. 56 at 6). However, despite plaintiff's bare assertion that defendants' calculation of attorney's fees "seems exorbitant," the court finds that an hourly rate of $165-$275 multiplied by 700.20 hours expended by defendants' attorneys over a period spanning almost one year is reasonable in light of the detailed litigation history, complex legal issues, and millions of dollars in damages at stake in this case. Accordingly, the court will now consider the remaining lodestar factors.

        *i.    The time and labor required*

Defendants assert a total of 700.20 hours of professional services were rendered in defending against plaintiff's claims, including "reviewing years of extensive litigation relating to [plaintiff's] claims, researching, drafting and finalizing the Motion to Dismiss and Motion to Stay, attending hearings, and responding to [plaintiff's] voluminous discovery requests." (ECF No. 52 at 18).

        *ii.    The novelty and difficulty of the questions involved*

Defendants assert that this action presented complex questions relating to the False Claims Act. *Id.*

### iii. *The skill requisite to perform the legal service properly*

Defendants assert that this case involved the FCA and the Nincth Circuit precedent relating thereto, and required the defendants' counsel to "engage in extensive research to gain familiarity with the same." *Id.* at 19.

### iv. *The preclusion of other employment by the attorney*

Defendants assert that this factor is not applicable. *Id.*

### v. *The customary fee*

Defendants assert the normal billing rates for Brownstein are as follows: Partners bill at an hourly rate of between $350.00 - $1,065.00. Associates bill at an hourly rate of between $245.00 - $380.00. As such, the rates billed to the defendants were substantially reduced. *Id.*

### vi. *Whether the fee is fixed or contingent*

Defendants assert that the fee here is fixed, and equals the number of hours worked multiplied by the applicable hourly rate, and is reduced by 15%. *Id.*

### vii. *Time limitations imposed by the client or the circumstances*

Defendants assert that this factor is not applicable. *Id.*

### viii. *The amount involved and the results obtained*

Defendants assert the total exposure to defendants was over $3.8 billion in damages, "of which the United States would have recovered $3 million and plaintiff would have recovered over $829 million, if successful." *Id.* at 18.

### ix. *The experience, reputation, and ability of the attorneys*

Defendants assert that several attorneys and paralegals from Brownstein worked on this matter. However, the principal litigators were Kirk B. Lenhard, Esq., Laura B. Langberg, Esq., and Emily A. Ellis, Esq. Defendants detail the experience, reputation, and ability of the attorneys as follows:

> Mr. Lenhard has been practicing law since 1975. (Lenhard Aff'd. at ¶ 11). His practice focuses on commercial and complex litigation, and he has served many high profile clients, including Clark County, McCarran Airport, Republic Services, the Las Vegas Metropolitan Police Department and the City of Henderson. As an experienced trial attorney, he has taken over 175 trials to verdict, and has argued before all courts in the state of Nevada, as well as the Ninth Circuit Court of

Appeals. (*Id.*) Additionally, he was selected to be a fellow by the American College of Trial Lawyers, an organization comprised only of those lawyers demonstrating unparalleled skill in their practice. (*Id.*) He has also been a perennial selection in the Top 75 Mountain State Super Lawyers.

Mrs. Langberg has over ten (10) years' experience litigating complex commercial matters, including disputes over high-value contractual and real property issues. (*See id.* at ¶ 12.) Additionally, Laura represents commercial and gaming clients in a variety of disputes, including intellectual property and defamation matters. (*Id.*) She has represented clients in state and federal courts in Nevada and California, and the Trademark Trial and Appeal Board. (*Id.*) She litigates trademark and copyright disputes on behalf of international hospitality and gaming companies; for example, recovering infringing domain names under cybersquatting laws. (*Id.*) Prior to joining Brownstein, Mrs. Langberg was a law clerk in the United States District Court for the District of Nevada. (*Id.*)

Mrs. Ellis received her undergraduate degree from the University of Nevada, Las Vegas, and her law degree in 2010 from the University of LaVerne, College of Law. (*Id*. at ¶ 13.) Prior to joining BHFS, Mrs. Ellis served as a law clerk in the United States District Court for the District of Nevada [ ]. (*Id*.) Mrs. Ellis' practice focuses on complex commercial litigation. She has litigated before the United States Supreme Court, the Ninth Circuit Court of Appeals, the Nevada Supreme Court, the United States District Court for the District of Nevada and the Eighth Judicial District Court, Clark County Nevada – Civil and Family Division. (*Id.*) She has also appeared before and argued in front of the Nevada Supreme Court. (*Id.*) As an associate, Mrs. Ellis has worked on matters as counsel for Clark County, Clark County Department of Aviation, McCarran International Airport, SunAmerica Housing Fund 1585, police officers of the Las Vegas Metropolitan Police Department, NML Capital, Ltd, Boyd Gaming, Wynn Resorts/Encore and City of Henderson. (*Id.*)

(ECF No. 52 at 19–20).

        *x.*   *The 'undesirability' of the case*

Defendants assert that this factor is not applicable. *Id.* at 20.

        *xi.*   *The nature and length of the professional relationship with the client*

Defendants assert that Mr. Lenhard has represented Clark County and McCarran Airport in litigation matters since 2001. Brownstein has represented Clark County and McCarran Airport since 2010, when Mr. Lenhard joined the firm. *Id.*

. . .

. . .

James C. Mahan
U.S. District Judge

    *xii. Awards in similar cases*

  Defendants failed to properly address this factor. *Id.* at 21. However, plaintiff also failed to address this or any other lodestar factor under consideration by the court pursuant to this motion. *See* (ECF No. 56).

   *c. Summary*

  In light of the foregoing, the court holds that the time billed by Bernstein in litigating this case was reasonable. Furthermore, defendants timely filed their motion for attorney's fees pursuant to Rule 54(d)(2), and submitted an affidavit by Kirk B. Lenhard, the attorney responsible for billings in the case, authenticating the information contained therein and confirming that the bill has been reviewed and edited and that the fees and costs charged are reasonable, pursuant to LR 54-16(c). (ECF No. 52-1). Therefore, the court will award attorney's fees in the amount of $133,896.22.

**IV. Conclusion**

  Accordingly,

  IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants Clark County, The Clark County Department of Aviation, and McCarran International Airport's motion for attorney's fees (ECF No. 52) be, and the same hereby is, GRANTED, consistent with the foregoing.

  IT IS FURTHER ORDERED that plaintiff Cheryl Nolte Barnes' motion to exclude prohibited character attacks (ECF No. 55) be, and the same hereby is, DENIED as moot.

  IT IS FURTHER ORDERED that defendants Clark County, The Clark County Department of Aviation, and McCarran International Airport shall file proposed judgments consistent with this order within twenty-one (21) days of the date of this order.

  DATED August 23, 2018.

                 /s/ James C. Mahan
                 UNITED STATES DISTRICT JUDGE